IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VALISHA D. ARNOLD,

              *Plaintiff,*

    v.

LELAND DUDEK,

              *Defendant.*

Civil Action No. 2:23-cv-372

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

On October 17, 2014, Plaintiff Valisha Dawn Arnold ("Arnold") filed an application for a period of disability and disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, alleging disability beginning January 1, 2009. (ECF No. 11-6, p. 2). Arnold later amended the alleged onset of date of disability to October 14, 2014. (ECF No. 11-2, p. 20). Her application was initially denied on the basis that her alleged conditions were "not severe enough to keep [her] from working." (ECF No. 11-4, p. 5). Administrative Law Judge ("ALJ") Katherine Edgell held a hearing on September 8, 2017. (*Id.* at 22-27). ALJ Edgell found that Arnold was not disabled within the meaning of the Social Security Act. (ECF No. 11-3, pp. 17-28). The Appeals Council remanded the case to the ALJ on November 7, 2018. (Id. at 36-38). After another hearing, ALJ Leslie Perry-Dowdell found that Arnold was not disabled. (*Id.* at 43-54). The Appeals Council subsequently remanded the case back to the ALJ on January 5, 2021. (*Id.* at 63-65). ALJ Perry-Dowdell held a hearing on August 25, 2021. (ECF No. 11-2, p. 44). She once again found that Arnold was not disabled. (*Id.* at 20-34). Arnold requested that the Appeals Council review ALJ Perry-Dowdell's November 2021 decision. (*Id.* at 2). The Appeals

Council declined review and found that Arnold's arguments did not provide a basis for changing the ALJ's decision.  (*Id.*).  In March 2023, Arnold filed this action, and the parties have filed cross-motions for summary judgment.  (ECF Nos. 14, 16).  For the following reasons, the Court will deny Arnold's Motion for Summary Judgment and grant the Defendant's.

## I.    STANDARD OF REVIEW

### a. *Pro se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  In practice, this liberal pleading standard works as "an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure."  *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring).  If a court can reasonably read the pleadings to state a valid claim on which a plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements.  *Boag v. MacDougall*, 454 U.S. 364, 364 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969).

### b. Review of Social Security Cases

The Court's review of a social security case is based on the pleadings and the transcript of the record.  The scope of that review is limited to determining whether the Commissioner of Social Security ("the Commissioner") applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  *See* 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'") (quoting § 405(g)); *see also Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews

the ALJ's findings of fact to determine whether they are supported by substantial evidence). If the Court finds the Commissioner's decision was supported by substantial evidence, it must uphold the final decision. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The Court may not set aside a decision that is supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)); *see also Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986).

"Substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 587 U.S. 97, 97 (2019). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Id.* To facilitate the district court's review, the ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[ ]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *Id.* at 705-06. Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (internal citations omitted).

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity

for a statutory twelve-month period. *See Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process in guiding ALJs in determining whether a claimant is under a disability as defined by the Act. *See* 20 C.F.R. § 416.920. At step one, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity. *See id.* at § 416.920(a)(4)(i). If so, the disability claim will be denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. *See* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.922. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the ALJ must proceed to step three to determine whether the claimant's impairment meets or equals the criteria for a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to steps four and five.

In considering these steps, the ALJ must formulate the claimant's residual functional capacity ("RFC"). A claimant's RFC is defined as the most that an individual is able to do despite the limitations caused by his or her impairments. *See Fargnoli*, 247 F.3d at 40; 20 C.F.R. §

416.945(a). At step four, it is the claimant's burden of demonstrating an inability to perform his or her past relevant work. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). If the ALJ determines that the claimant lacks the RFC to resume his or her former occupation, the evaluation then moves to the fifth and final step. *See* 20 C.F.R. § 416.920(a)(4)(iv).

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. *See* 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the ALJ must consider the claimant's RFC, age, education, and past work experience. *See id.* The ALJ must further analyze the cumulative effect of all of the claimant's impairments to determine whether he or she is capable of performing work and is not disabled. *See* 20 C.F.R. § 416.923.

## II.    ANALYSIS

Arnold contends that the ALJ's decision denying her application for disability benefits was not supported by substantial evidence and contained multiple errors of law that require reversal. (ECF No. 15, p. 1). The Commissioner counters that the ALJ's conclusion that Arnold was not disabled is supported by substantial record evidence. (ECF No. 17). The Court will address each of Arnold's arguments below.

### a.  Arnold's Alleged Severe Limitations

Arnold contends that the ALJ erred at step two of the sequential evaluation process by failing to properly consider all of her medically determinable impairments. (ECF No. 15, p. 4). Specifically, Arnold contends that the ALJ failed to properly evaluate the severity and combined impact of her fibromyalgia, migraines, chronic fatigue, bilateral hearing loss, dizziness/vertigo, PTSD, anxiety, major depressive disorder, and agoraphobia. (*Id.*). Arnold contends that these are

severe impairments, corroborated by medical evidence, and that the ALJ's failure to properly consider the combined impact of her multiple impairments constitutes reversible error. (*Id.* at 5).

The ALJ made the following findings regarding the conditions at issue:

> The claimant alleges that she suffers from fibromyalgia, chronic fatigue, PTSD, panic attacks, hearing loss, migraines associated with vomiting, an irregular heartbeat, and depression (Ex. B2E/2). She alleges that these impairments lead to problems with lifting, standing, walking, sitting, climbing stairs, kneeling, squatting, reaching, using her hands, hearing, sleeping, paying attention, completing tasks, handling stress, memory, headaches, chronic pain, fatigue, a depressed mood, anxiety around others, and panic attacks in public (Ex. B4E). At the hearing, the claimant testified that her impairments caused poor memory, impaired cognition, migraines, low motivation, poor concentration, decreased overall mobility, a depressed mood, and decreased socialization. Despite the claimant's symptoms, the claimant reported that she helped care for pets, maintained her own personal care, did not need reminders to take medication, prepared quick meals, did light cleaning, drove a car, could go out alone, shopped in stores, had no problems handling money, watched television, read, socialized with others, attended church regularly, had no problems following instructions, and got along well with authority figures (Ex. B4E). After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence of record. Here, the claimant has described daily activities and exhibited behavior that is inconsistent with the claimant's allegations of disabling symptoms and limitations. Additionally, the objective medical records do not completely corroborate her statements and allegations regarding her impairments and resultant limitations.

(ECF No. 11-2, pp. 28-29). The Court finds that the ALJ considered the combined impact of Arnold's conditions. She considered Arnold's subjective complaints, activities of daily living, and objective medical records. To the extent that Arnold argues that the ALJ discounted her subjective complaints about the combined impact of these conditions, the ALJ properly analyzed the evidence of record.

The ALJ is required to consider a claimant's statements regarding pain and symptoms. 20 C.F.R. § 416.929(b). However, a claimant's statements are not sufficient, standing alone, to

establish the claimant is disabled. *Id.* As the United States Court of Appeals for the Third Circuit has noted, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d. Cir. 2011) (citing 20 C.F.R. § 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled")). The ALJ must determine whether a claimant's subjective complaints are "reasonably consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(b). When evaluating testimony regarding a claimant's reported degree of pain and subjective complaints, the ALJ must make credibility determinations. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009). It is incumbent upon the ALJ to "specifically identify and explain what evidence [they] found not credible and why [they] found it not credible." *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (internal citations omitted). The Court's review of those determinations is deferential. *Id.*; *see also Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 188-89 (3d Cir. 2007); *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003).

Based on its review of the entire record, the Court finds substantial evidence supports the ALJ's finding that Arnold's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. The ALJ extensively discussed the objective medical evidence, as well as Arnold's testimony concerning the same. (ECF No. 11-2, pp. 28-29). The ALJ gave a detailed explanation as to why the medical evidence supported her conclusion that Arnold's pain and symptoms were not as disabling as she alleged. This evidence included medical treatment notes, medical opinion evidence, and Arnold's reported activities of daily living, all of which the ALJ is permitted to consider when assessing a claimant's credibility. (*Id.* at 27-32). The ALJ can, and in fact must,

consider consistency with objective medical evidence, including statements made to physicians, in evaluating a claimant's subjective testimony about the intensity, persistence, and limiting effects of her symptoms. *See* 20 C.F.R. § 404.1529(c)(2). The Court finds that the ALJ adequately explained her decision, as established by the evidence, for including or discounting certain alleged limitations or subjective symptoms and complaints of Arnold. The ALJ properly evaluated that evidence and the record as a whole in reaching the conclusion that Arnold was able to perform a range of light work and, therefore, was not disabled. Her findings and conclusions are supported by substantial evidence. The Court is not permitted to reweigh the evidence.

**b. Arnold's Alleged Fibromyalgia**

Arnold next contends that the ALJ failed to properly evaluate her fibromyalgia in accordance with Social Security Ruling 12-2p. (ECF No. 15, p. 5). Social Security Ruling 12-2p was designed to provide "guidance on how we develop evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia (FM), and how we evaluate FM disability claims and continuing disability reviews under Titles II and XVI of the Social Security Act." SSR 12-2p, 2012 WL 3104869 (Jul. 25, 2012). The regulation provides certain criteria for a finding of a medically determinable impairment of fibromyalgia then states that, once an impairment is established, the ALJ engages in the five-step sequential analysis. *Id.* That is, "we consider the severity of the impairment, whether the impairment medically equals the requirements of a listed impairment, and whether the impairment prevents the person from doing his or her past relevant work or other work that exists in significant numbers in the national economy." SSR 12-2p.

Here, the ALJ found that Arnold suffers from fibromyalgia and it constitutes a severe impairment. (ECF No. 11-2, p. 23 (stating that "[t]he claimant has the following severe

impairment[]: . . . fibromyalgia" and that fibromyalgia is a "medically determinable impairment[]" that "significantly limit[s] the ability to perform basic work activities as required by SSR 85-28"). As such, the ALJ complied with SSR 12-2p. *See Thompson v. Colvin*, 575 F. App'x 668, 677 (7th Cir. 2014) (rejecting a claimant's contention that the ALJ's decision required remand because he failed to consider SSR 12-2p, stating that "a remand is unnecessary because the ALJ accepted Thompson's diagnosis of fibromyalgia as a severe physical impairment that limits her functional capacity"); *Accomando v. Comm'r. of Soc. Sec.*, 2014 WL 6389060, at * 7 (D. N.J. Nov. 14, 2014) (stating that SSR 12-2p is "irrelevant" because the ALJ found that the claimant's fibromyalgia constituted a severe impairment, but concluded that despite her fibromyalgia and other impairments, she could perform sedentary work); *DeJesus v. Berryhill*, 2017 WL 1847355, at * 8 (E.D. Pa. March 21, 2017) (rejecting an argument that the ALJ failed to properly apply SSR 12-2p where the ALJ found that the claimant's fibromyalgia was a medically determinable impairment and then engaged in the five-step sequential evaluation process); *Fleet v. Comm'r. of Soc. Sec.*, 2015 WL 3504962, at * 6 n. 3 (W.D. Pa. June 3, 2015) (rejecting the plaintiff's argument that the ALJ misapplied SSR 12-2p, noting that "it is of no moment whether the ALJ properly analyzed the diagnostic criteria for fibromyalgia" because she found that the fibromyalgia was so severe as to constitute a severe impairment).

Arnold does not dispute that the ALJ complied with SSR 12-2p insofar as it instructs the ALJ to follow the five-step sequential analysis once assessing whether fibromyalgia is a medically determinable impairment. Instead, Arnold cites to portions of the record indicating that she has "limited ability to sustain work for more than 2 hours at a time secondary to severe fatigue, diffuse pain which would preclude the possibility of competitive employment." (ECF No. 15, p. 5). She highlights Dr. Emily Cottrell's statement documenting widespread pain and persistent symptoms

related to fibromyalgia. (*Id.*). Arnold misunderstands the applicable standard of review. The Court's role is to discern whether substantial evidence of record supports the ALJ's finding, not whether substantial evidence could have yielded a different result. Substantial evidence could support Arnold's claims *and* the ALJ's findings because substantial evidence is less than a preponderance of the evidence. *See Jesurum v. Sec. of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If substantial evidence supports the ALJ's findings, it does not matter if substantial evidence also supports Arnold's claims. *Reefer*, 326 F.3d at 379; *see also Hundley v. Colvin*, 2016 WL 6647913, at * 2 (W.D. Pa. Nov. 10, 2016) (internal citations omitted).

The Court's review of the record demonstrates that substantial evidence supports the ALJ's decision. The ALJ acknowledged Arnold's complaints regarding her fibromyalgia and related pain. (ECF No. 11-2, p. 29). She noted that Arnold's alleged symptoms are documented in her medical records. (*Id.*). Nevertheless, the ALJ found that Arnold is not disabled:

> [T]he claimant has reported that she is able to tolerate the pain unless it is a "bad flare," despite being unable to take the medication for her fibromyalgia because it "zombifies her" (Ex. B4F/17; B7F/50). Moreover, while her husband helps with many of the household chores, due to significant fatigue, she has continued to walk with a normal gait, while exhibiting full strength in her upper and lower extremities and normal dexterity (Ex. B11F/4; B12F/2-4; B23F/2-4; B24F/3). Therefore, the undersigned has fully accounted for these symptoms by limiting the claimant to light work with additional postural and manipulative restrictions.

(*Id.*). Further, the ALJ found that Arnold's daily activities suggested that she is not as disabled as she claims. (ECF No. 11-2, p. 28 (listing Arnold's daily activities in concluding that her "described daily activities and exhibited behavior . . . [are] inconsistent with [her] allegations of disabling symptoms and limitations). In sum, the ALJ properly considered Arnold's fibromyalgia in accordance with Social Security Ruling 12-2p.

### c. Arnold's Alleged Hearing Loss and Vertigo

Arnold contends that the ALJ failed to properly consider her documented bilateral hearing loss and vertigo. (ECF No. 15, p. 6). According to Arnold, her hearing loss, in combination with her dizziness and vertigo, significantly impacts her ability to function in a work environment. (*Id.*). The ALJ acknowledged Arnold's alleged bilateral hearing loss:

> Treatment records from the claimant's otolaryngologist confirms that she has progressive bilateral hearing loss, which requires the use of hearing aids. Additionally, an audiogram did reveal significant hearing loss; however, it did not show sufficient air or bone conduction deficits and her word recognition scores were 80 percent in the right ear and 100 percent in the left ear (Ex. B13F). Accordingly, the limitations on the noise level in her work environment would adequately address the claimant's hearing symptoms. Thus, the record fails to establish that the claimant's issues with hearing loss would require a more restrictive residual functional capacity than has been adopted herein.

(ECF No. 11-2, p. 30). The ALJ noted that "the medical evidence shows that the claimant's various impairments have caused certain functional limitations." (*Id.*) Nevertheless, the ALJ stated: "while these symptoms do limit [her] functionality, the record, considered as a whole, supports a finding that [Arnold] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the additional limitations outlined in the residual functional capacity assessment outlined above." (*Id.* at 31).

The record shows that the ALJ considered Arnold's bilateral hearing loss. There is substantial evidence in the record, including Arnold's treatment records, to support the ALJ's finding that her bilateral hearing loss did not render her disabled. Moreover, the ALJ accounted for Arnold's vertigo when she found that Arnold "can have no exposure to unprotected heights or moving machinal parts" and "cannot work at a production rate where tasks must be completed quickly." (*Id.* at 28); *see also Selman v. Colvin*, 2017 WL 1250985, at *8 (D.N.J. Jan. 27, 2017)

(holding that in limiting the claimant from "all exposure to moving machinery and unprotected heights" in the RFC analysis, the ALJ adequately accounted for bouts of dizziness or vertigo).

### d. Arnold's Alleged Mental Health Limitations

Arnold next contends that the ALJ "downplayed" her mental health impairments, including anxiety, major depressive disorder, agoraphobia, and PTSD. (ECF No. 15, p. 6); (*see also id*. at 7 ("[T]he ALJ improperly discounted the severity of [Arnold's] mental health impairments despite consistent documentation in the medical record.")).  Arnold also contends that the ALJ failed to properly apply the special technique for evaluating mental health impairments as required by 20 C.F.R. § 404.1520a.  (*Id.*).

The Third Circuit explained how the ALJ is required to view evidence of mental health impairments in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999):

> When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a.  *Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir. 1993). These procedures are intended to ensure a claimant's mental health impairments are given serious consideration by the Commissioner in determining whether a claimant is disabled. . . . The ALJ must give all the evidence in the record the serious consideration required by law.  42 U.S.C. § 423(d)(5)(B) [stating that the] Commissioner must consider all evidence available in an individual's case record in making a disability determination); 42 U.S.C. § 421(h).
>
> The statute concerning the evaluation of mental impairments provides, "an initial determination under subsection (a), (c), (g) or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner of Social Security has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment."  42 U.S.C. § 421(h).  Thus, "when the record contains evidence of a mental impairment, the Secretary [now Commissioner] cannot determine that the claimant is not under a disability without first making every reasonable effort to ensure that a qualified psychiatrist . . . has completed the medical portion of the case review and any applicable residual functional capacity assessment."  [*Andrade*, 985 F.2d at 1048].

Because 42 U.S.C. § 421(d), which covers hearings before the ALJ, is excluded from § 421(h)'s purview, the ALJ is not required to employ the assistance of a qualified psychiatrist or psychologist in making an initial determination of mental impairment. Instead, the Commissioner's regulations provide the ALJ with greater flexibility than other hearing officers. At the initial and reconsideration levels, a PRT form—outlining the steps of the § 404.1520a procedure—must be completed and signed by a medical consultant. 20 C.F.R. § 404.1520a(d)(1). However, the ALJ has several options available: she can complete and sign the document without the assistance of a medical adviser; she can call a medical adviser for assistance in completing the document; or, if new evidence is received or the issue of mental impairments arises for the first time, she can remand the case for completion of the document and a new determination. 20 C.F.R. § 404.1520a(d)(1)(i-iii). In summary, the regulations allow the ALJ to remand for further review, to proceed with a determination without the assistance of a medical adviser, or to call a medical adviser for assistance with the case. In all cases, however, the ALJ has a duty to consider all evidence of impairments in the record.

*Plummer v. Apfel*, 186 F.3d 422, 432- 33 (3d Cir. 1999).

The ALJ properly considered the evidence before her and applied the special technique for mental health impairments as required by 20 C.F.R. § 1520a. First, the ALJ considered whether Arnold had a medically determinable impairment in accordance with 20 C.F.R. § 404.1521. (ECF No. 11-2, p. 25). The ALJ found that Arnold suffered from mental impairments. (*Id.*). The ALJ then rated the degree of functional limitations resulting from the impairments in compliance with 20 C.F.R. § 1520a(c). She found that Arnold (1) had no more than mild limitations in understanding, remembering, or applying information; (2) no more than mild limitations interacting with others; (3) no more than moderate limitations concentrating, persisting, or maintaining pace; and (4) no more than mild limitations adapting or managing oneself. (*Id.* at 25-27). Based upon this analysis, the ALJ concluded that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15." (*Id.* at 25). Thus, the Court holds that the ALJ properly considered Arnold's mental health impairments and applied 20 C.F.R. § 404.1520a.

The ALJ's findings are supported by substantial evidence. The ALJ's conclusion that Arnold is no more than mildly impaired in understanding, remembering, or applying information is supported by record evidence that Arnold worked as a graphic designer during the period at issue. (*Id.* at 25). Her conclusion that Arnold is no more than mildly limited in interacting with others is supported by Arnold's statements regarding her social interactions. The ALJ considered Arnold's contentions that she has limited interactions due to fatigue, but considered this to be a limitation associated with Arnold's complaints of fatigue and not a result of her mental health impairments. (*Id.* at 26). Moreover, the ALJ found that Arnold's statements that she is "easily irritated" by authority figures was not supported by her medical records. (*Id.*). The ALJ's conclusion that Arnold had no more than mild limitations adapting or managing oneself is supported by record evidence that her medication is "generally effective at controlling her anxiety, and she is typically able to work through her panic symptoms." (*Id.*). The Court holds that the ALJ properly considered Arnold's mental health impairments and complied with the requirements of 20 C.F.R. § 1520a.

### e.  The Vocational Expert's Testimony

Arnold next contends that the ALJ's conclusion that Arnold "could perform work existing in significant numbers in the national economy was contradicted by the testimony of the Vocational Expert at the hearing." (ECF No. 15, p. 7). Arnold argues that the ALJ improperly relied on selective portions of the hearing record that supported a finding of non-disability while ignoring other evidence. (*Id.*).

At the September 2017 hearing, a vocational expert testified that an individual with Arnold's limitations would be able to perform the job of a marker, a router, or an electrical equipment assembler. (ECF No. 11-2, p. 131). When asked if an individual who could not sit,

stand, or walk, for eight hours would be employable, the expert responded that such an individual would not be able to perform any full-time job. (*Id.*). The expert also responded that an individual who was off-task in excess of twenty-five percent of the workday and absent more than three days per month would be unable to maintain employment. (*Id.* at 132). At the November 2019 hearing, a vocational expert testified that an individual with Arnold's limitations could not perform her past work as a graphic designer. (ECF No. 11-2, p. 101). Nevertheless, the expert testified that there were other jobs in the national economy that such a person could perform. (*Id.* at 101-02 (stating that a person with Arnold's limitations could perform the work of a sorter, marker, or laundry folder)). On cross-examination, the expert admitted, based on a hypothetical question, that if mental health impairments would cause an individual to be off-task at least 20 percent or more per day, there would be no jobs available for that individual in the national economy. (*Id.* at 103). At the August 2021 hearing, a vocational expert testified that an individual with Arnold's limitations could not perform her past work but could work tagging and preparing retail products or in housekeeping. (*Id.* at 66-67).

Arnold does not highlight which testimony she contends contradicts the ALJ's findings. (*See* ECF No. 15). The ALJ made the following findings regarding the jobs available to Arnold in the national economy:

> The vocational expert testified that . . . the individual would be able to perform the requirements of representative occupations such as:
>
> 1. Routing clerk, which the Dictionary of Occupational Titles (DOT) defines at 222.687-022 as light and unskilled with an SVP of two, of which there exist 30,000 jobs in the national economy.
>
> 2. Marker, which the DOT defines at 209.587-034 as light and unskilled with an SVP of two, of which there exist 100,000 jobs in the national economy.

3. Housekeeping cleaning, which the DOT defines at 323.687-014 as light and unskilled with an SVP of two, of which there exist 74,000 jobs in the national economy.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(ECF No. 11-2, p. 33). These findings are consistent with the vocational expert's testimony at the August 2021 hearing. To the extent Arnold contends that the ALJ's findings are contradicted by the vocational experts' testimony at the September 2017 and November 2019 hearings, this argument fails. The ALJ did not find Arnold's limitations to be consistent with the limitations articulated to the vocational expert at the prior hearings. The ALJ had the authority to disregard the experts' testimony. *See Jones v. Barnhart*, 364 F.3d 501, 506 (3d Cir. 2004) ("Even assuming that [the vocational expert's] testimony alone is sufficient to support a claim of disability, the ALJ did not err in failing to accept the hypothetical. The hypothetical asked the [expert] to make certain assumptions . . . . As the District Court noted, however, because the hypothetical was inconsistent with the evidence in the record, the ALJ had the authority to disregard the response."). Thus, the Court finds that the ALJ's conclusions regarding Arnold's employability were consistent with the vocational expert's testimony and supported by substantial evidence.

**f. Third-Party Statements**

Arnold contends that the ALJ failed to properly consider third-party statements that corroborate Arnold's claims regarding her limitations, including statements from her husband and former co-workers. (ECF No. 15, p. 8). Arnold contends that these statements, disregarded by the

ALJ, provide valuable insight into the decline of her health in her personal and professional life. (*Id.*).

> After the November 2019 hearing, the ALJ considered Arnold's third-party statements:
>
>> In a pair of written third party statements, the claimant's husband and her former colleague indicated that she struggles to complete household chores or to "perform even the most basic tasks critical to her field of expertise" (Exhibits B24E; B33E). The undersigned finds these statements to be somewhat persuasive, as they are generally consistent with the objective medical evidence discussed herein. However, both statements lack specificity regarding the claimant's functional capabilities. Moreover, whether an individual is capable of performing her past work is an issue reserved for the Commissioner.

(ECF No. 11-3, p. 50).  In her most recent findings, issued after the August 2021 hearing, the ALJ discussed one of the written statements, Exhibit B3E, at length.  (ECF No. 11-2, pp. 25-26).  The ALJ did not cite or discuss the letter from Mark Todd (Exhibit B33E) or the letter from Jeff Arnold (Exhibit B48E).  (*See* ECF No. 11-2).

ALJs are permitted to "discount" lay witness testimony but must explain their reasons for doing so. *Hendry v. Comm'r of Soc. Sec.*, 2018 WL 4616111, at *15 (D.N.J. Sept. 26, 2018); *see also Butterfield v. Astrue*, 2011 WL 1740121, at *6 (E.D. Pa. May 5, 2011) ("[T]he law requires the ALJ to consider and weigh all relevant evidence, including nonmedical evidence from spouses, parents, other relatives, friends, and neighbors.").  Thus, the ALJ's failure to explicitly discuss the written statements at issue is technically a violation of the applicable standards.  Nonetheless, the Court will affirm the ALJ's decision because her failure to discuss the statements is not fatal to her decision, which was well-reasoned and supported by the record as a whole. *See Butterfield*, 2011 WL 1740121 at *6.  The ALJ's error was harmless and did not affect the outcome of the case.  *See Rutherford*, 399 F.3d at 553 (refusing to remand where stricter compliance with social security ruling would not have changed the outcome of the case); *Bailey v. Astrue*, 2009 WL 577455, at *11 (E.D. Pa. Mar. 4, 2009) ("In this case, the ALJ did not explicitly address the testimony of

plaintiff's mother in the decision. However, the ALJ examined the medical evidence . . . and weighed that against the plaintiff's testimony. . . . [P]laintiff's mother's testimony would not have changed the ALJ's decision, as it was cumulative and merely reiterated the fact that plaintiff experienced pain which she observed when he visited her."); *Thompson v. Astrue*, 2009 WL 7007996, at * 15 (E.D. Pa. Jan. 30, 2009) (holding that where discussion of lay witness's letter would not have changed the outcome of the case, failure of the ALJ to address it was harmless error).

Here, the evidence from Arnold's husband and co-worker provided minimal support for her position. Arnold's husband noted that Arnold cannot drive far because of her vertigo, cannot hear without hearing aids, cannot socialize on her "bad days," cannot do heavy chores, does not cook most meals, and does not do much of the household shopping. (ECF No. 11-8, pp. 38-39). He explained how Arnold's alleged mental impairments impact her day-to-day life. (*Id.*).

Mark Todd ("Todd"), Arnold's former co-worker, stated that Arnold has experienced "an acute and marked decline in her ability and capacity to perform even the most basic tasks critical to her field of expertise." (ECF No. 11-7, p. 156). He stated that she has declined many graphic design projects because she is unable to meet the minimal physical demands needed to complete the task. (*Id.*). Todd stated that Arnold's "condition" also limited her personal life by diminishing her ability to travel or visit with friends without serious consequences to her health. (*Id.*).

Although she failed to address these statements, the ALJ cited to substantial evidence supporting her credibility and RFC determinations. Moreover, these statements were duplicative of Arnold's own subjective complaints – which the ALJ considered in depth and found were not supported by objective medical evidence. (ECF No. 11-2, pp. 31-32). The ALJ considered Arnold's self-reported activities of daily living, including caring for pets, maintaining her personal

care, taking medication, preparing quick meals, performing light cleaning, driving a car, going out alone, shopping in stores, handling money, watching television, reading books, socializing with others, attending church, and following instructions. (*Id.* at 28). This recitation of Arnold's activities was largely corroborated by the written statements. Based on this record, which provides substantial evidence supporting the ALJ's conclusions, the ALJ's failure to consider the two written statements was harmless. The statements by Arnold's husband and former co-worker would not have changed the ALJ's decision as they were cumulative and merely reiterated Arnold's subjective complaints. The Court holds that the ALJ's failure to consider Exhibits B33E and B48E does not constitute reversible error.

### g. Arnold's Subjective Complaints

Arnold contends that the ALJ failed to properly evaluate her subjective complaints in accordance with Social Security Ruling 16-3p. (ECF No. 15, p. 8). She contends that the medical evidence, including statements by Dr. Barbara Nightingale and Dr. Emily Cottrell, provides objective support for her complaints. (*Id.*).

Although the ALJ may consider subjective complaints as evidence in support of a disability, "the ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003). Social Security Ruling 16-3p provides that in evaluating the intensity and persistence of symptoms, the ALJ should consider evidence including (1) objective medical evidence; (2) the claimant's statements; and (3) medical sources (e.g. diagnoses, opinions, treatment). In addition, the ALJ should also review the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.[1]

*Id.* A claimant's statements about the intensity, persistence, and effects of her pain or other symptoms should not be rejected "solely because the available objective medical evidence does not substantiate [her] statements," however, the objective medical evidence is "one of the many factors [the ALJ] must consider." *Id.*

On review, the Court must "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the Court does] not, of observing a witness's demeanor while testifying." *Jones*, 36 F.3d at 476 (internal citations omitted). Nevertheless, the ALJ's assessment of a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, 1996 WL 374186, at *2. In reviewing the ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [the plaintiff's

---

[1] An "ALJ need not analyze all seven factors" in his credibility determination. *Hatcher v. Berryhill*, 2019 WL 1382288, at *15 (N.D. Ohio March 27, 2019). The ALJ needs only to address "factors pertinent to evidence of record." SSR 13-6p.

testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d

469 at 476.

The ALJ found Dr. Charles Cooke's testimony to "be very persuasive." (ECF No. 11-2, p.

31). Dr. Cooke explained that "while [Arnold's] subjective complaints were rather extensive, there

was limited objective support for a greater degree of functional limitation." (*Id.*). Contrary to

Arnold's contention, the ALJ considered Dr. Cottrell and Dr. Nightingale's statements. The ALJ

found that Dr. Cottrell's opinions were unpersuasive as she "overstate[d] the severity of the

claimant's various impairments and relie[d] too heavily on [Arnold's] subjective complaints."

(*Id.*). In regard to Dr. Cottrell's statement, the ALJ found:

> Specifically, [Dr. Cottrell] opined that the claimant could not work more than two
> hours at a time because of severe fatigue and diffuse pain and that she would have
> a moderate degree of difficulty with social interaction, a marked degree of difficulty
> completing tasks, and at least five absences per month (Ex. B25F/3-6). While it is
> noted that she treated the claimant on a regular basis throughout the period at issue,
> the objective evidence from her own medical records does not support such a degree
> of functional limitation (See Ex. B16F; B21F). Further, the conclusion is
> inconsistent with the evidence of record, which shows that the claimant displayed
> an atraumatic head, round and reactive pupils, a supple and non-tender neck, no
> cervical adenopathy, clear lungs, normal breath sounds, a regular heart rate and
> rhythm, normal heart sounds, no chest wall tenderness, a soft and non-tender
> abdomen, intact bowel sounds, no edema, no neurological abnormalities, intact
> cranial nerves, normal skin, a normal gait, full musculoskeletal range of motion, no
> musculoskeletal tenderness, intact coordination, normal muscle tone, normal deep
> tendon reflexes, intact sensation, full motor strength, full grip strength, intact
> dexterity, and good ability to squat, walk on her toes and heels, get on and off an
> exam table, and rise from a chair (Ex. B6F/22, 29, 36, 39, 60, 73, 76; B12F/3-4;
> B16F/5, 8, 18; B17F/4, 8, 11; B19F/20; B21F/3, 24; B23F/3-4). These symptoms
> do not support Dr. Cottrell's conclusions. Therefore, this opinion is not persuasive.

(*Id.*).

The ALJ also considered Dr. Nightingale's opinions finding them to be "somewhat

persuasive" and stating:

> Finally, the undersigned finds the conclusions reached by . . . [Dr. Nightingale] are
> somewhat persuasive (Ex. B28F). Based upon [her] treating relationship with the

> claimant, [she] opined that [Arnold] would have a marked degree of difficulty maintaining her concentration and keeping to a schedule and an extreme degree of difficulty working a full day without interruption (Ex. B28F/3).  It is noted, however, that [Dr. Nightingale] attributed some of the claimant's issues to her "clinical history of excessive daytime fatigue," rather than her various mental impairments (Ex. B28F/3).  This opinion, based on the claimant's mental health treatment history, is generally supported by the evidence of record, but relies too much on the claimant's subjective complaints.

(*Id.*).  The Court will not, and cannot, second guess the ALJ's credibility determinations.  The ALJ considered Arnold's subjective complaints, the SSR 16-3p factors, the objective medical evidence, and witness credibility.  The ALJ's finding that Arnold's subjective complaints were not well-supported by the objective medical evidence is supported by substantial evidence.

### III.    CONCLUSION

The Commissioner's decision that Arnold is not disabled under §§ 216(i) and 223(d) of the Social Security Act is supported by substantial evidence.  The Court will affirm the Commissioner's decision and grant summary judgment in his favor.  Arnold's motion will be denied.  Orders of Court will follow.

Dated:  6/23/25

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE